UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TORREY BARLOW, | * | |
| | * | |
| PLAINTIFF | * | CIVIL ACTION NO. 12-2248 |
| | * | |
| VERSUS | * | |
| | * | JUDGE ELDON E. FALLON |
| BP EXPLORATION & PRODUCTION, INC., | * | |
| BP AMERICA PRODUCTION COMPANY | * | MAG JUDGE KAREN W. ROBY |
| BP P.L.C., GLOBAL FABRICATIONS, LLC, | * | |
| LAWSON ENVIRONMENTAL SERVICE, | * | SECTION "L"(4) |
| LLC, ODYSSEA MARINE, INC., *in* | * | |
| *personam*, AND M/V ODYSSEA | * | |
| ATLAS, AND THEIR ENGINES, | * | |
| TACKLE, APPAREL, ETC., *in rem*, | * | |
| | * | |
| DEFENDANTS. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER AND REASONS

Pending before the Court is a motion for summary judgement from Defendants Odyssea Marine, Inc., Global Fabrications, LLC, and Lawson Environmental Service, LLC. R Doc. 57. Plaintiff Torrey Barlow filed a response, R. Doc. 61, and the same Defendants have filed a reply, R. Doc. 64. Pursuant to the Court's order, Plaintiff also submitted supplemental briefing on the impact of *Sanchez v. Smart Fabricators of Texas, LLC*, 997 F.3d 563 (5th Cir. 2021) (en banc) on his claim of Jones Act Seaman status. R. Doc. 68. Having studied the briefing and applicable law, the Court rules as follows.

I.  **BACKGROUND**

This suit arises out of the April 20, 2010 explosion of the Mobile Offshore Drilling Unit ("MODU") Deepwater Horizon as it was in the process of abandoning a well, known as

Macondo, it had drilled on the Outer Continental Shelf off the coast of Louisiana. R. Doc. 45 at 1. The explosion resulted in millions of gallons of crude oil being discharged into the Gulf of Mexico over 87 days (the "Oil Spill"). *Id.* Global Fabricators and/or Lawson were retained by BP to clean up this spill. Global Fabricators obtained the supply vessel Odyssea Atlas from Odyssea Marine for their clean-up operation. Plaintiff worked aboard this vessel from May to September 2010 and allegedly came into contact with the oil and clean-up chemicals used in the operation. Plaintiff alleges that as a result of the negligent and reckless actions of Defendants in causing the oil spill and in failing to properly design and implement a proper response to the oil spill he suffered acute and chronic injuries.

Plaintiff brings a claim for relief under the Jones Act against Defendants Lawson and Global Fabrication. *Id.* at 8. Plaintiff alleges breach of warranty of seaworthiness *in personam* against Defendants Odyssea Marine, Inc., Lawson, and Global Fabrications. *Id.* at 9. Plaintiff brings multiple additional claims against other Defendants including BP which are not relevant to the present motion. *Id.* at 10-18.

In its response, Defendant Odyssea Marine avers that Plaintiff failed to state a claim for which relief can be granted and denies all allegations. R. Doc. 47 at 1. Defendant Lawson avers the same in its response and denies all allegations. R. Doc. 49 at 1. Defendant Global Fabrications, in its response, denies most of the allegations and avers that Plaintiff has failed to state a claim upon which relief can be granted. R. Doc. 50 at 10. Each of these Defendants also raises a number of affirmative defenses. R. Doc. 47; R. Doc. 49; R. Doc. 50.

## II.   PRESENT MOTION

Defendants Odyssea Marine, Inc. ("Odyssea"), Lawson, and Global Fabrications filed the present motion for summary judgement on March 14, 2022. R. Doc. 57. Plaintiff filed a response

on April 5, 2022, and Defendants filed a reply on April 13, 2022. R. Doc. 61; R. Doc. 64. In their motion, Defendants allege that 1) Plaintiff Barlow is not a seaman entitled to bring Jones Act and general maritime law seaworthiness claims, 2) Barlow has no viable unseaworthiness claim, 3) Barlow did not suffer any injury aboard the M/V Odyssea Atlas, and 4) like the responder defendants in other cases related to the Deepwater Horizon incident, the Mover-Defendants are entitled to be dismissed under the doctrines of derivative immunity, discretionary function immunity, and the implied conflict preemption doctrine. R. Doc. 57 at 1.

Plaintiff avers that all of these disputes create genuine issues of material fact to support the denial of this motion. *Id.* at 11. Defendants in their reply allege that Plaintiff's assertions as to genuine issues of material fact are false and that there are, in fact, no genuine issues of material fact. R. Doc. 64 at 4.

### III. APPLICABLE LAW

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Generally, when evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court should not look past the pleadings.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The district court must construe facts in the light most favorable to the nonmoving party and must accept as true all factual allegations contained in the complaint. *Id.* at 678. "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

IV. **DISCUSSION**

Defendants present four arguments as to why the Court should grant summary judgment in their favor. The Court examines each in turn.

    a. **Seaman Status**

To qualify as a Jones Act seaman, a worker must "contribute[] to the vessel or to the accomplishment of its mission." *Sanchez*, 997 F.3d at 569 (citing *Offshore Co. v. Robison, 266 F.2d 769*, 779 (5th Cir. 1959)). In addition, the worker "'must have a connection to a vessel in navigation. . . that is substantial in terms of both its duration and its nature.'" *Id.* (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995)). Generally, the duration element is satisfied by a worker who spends thirty percent or more of his or her time in service of a vessel in navigation. *Id.* (citing *Chandris*, 515 U.S. at 371). In *Sanchez*, the Fifth Circuit addressed the nature element, noting that these additional questions must be asked: (1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer? (2) Is the work sea-based or involve seagoing activity? and (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location? *Id.* at 574.

During the time that Barlow was aboard the M/V Odyssea Atlas, the vessel was in the Gulf of Mexico performing the function for which it was chartered: collecting oiled boom and

bags from shrimp boats. Barlow spent the entire time he was on board collecting the oiled booms and bags. Accordingly, his service directly contributed to the accomplishment of the vessel's mission.

During the period relevant to this case, Barlow worked from early May until September 24. All of this time, he was assigned to the M/V Odyssea Atlas except for approximately seven days at the end of that period on a barge not owned by Odyssea. Therefore, Barlow spent over four months in service of the M/V Odyssea Atlas and one week on the barge. This is well over the thirty percent needed to fulfill the substantial time element of *Chandris*.

Although the nature element of the seaman test has evolved under *Sanchez*, "the inquiry whether [the plaintiff] was subject to the perils of the sea is not the sole or primary test for seaman status, it remains 'one of the considerations in the calculus.'" *Meaux v. Cooper Consolidated, LLC*, 545 F. Supp. 3d 383, 389 (E.D. La. 2021) (quoting *Sanchez*, 997 F.3d 564, 573). Barlow was undoubtedly subject to the perils of the sea during the course and scope of his work aboard the M/V Odyssea Atlas in the Gulf of Mexico. And Barlow's work on board the M/V Odyssea Atlas satisfies the additional inquires set out in *Sanchez*. 997 F.3d at 574. Although Barlow was employed by Global Fabrications, he also owed an allegiance to the M/V Odyssea Atlas. Barlow's work in service of the M/V Odyssea Atlas consisted of hitches of 20 days or more on and 10 days or less off. Exhibit 1, p. 57, lines 13-15. Often, he had as few as three days off. Exhibit 1, p. 57, lines 23-25, p. 58, lines 1-3. The entire time Barlow was aboard the M/V Odyssea Atlas it was offshore in the Gulf of Mexico being used as a supply vessel to pick up and transport waste from the BP oil spill. Exhibit 1, p. 55, lines 9-10. Barlow's primary responsibility aboard the M/V Odyssea Atlas was to transfer oily waste unloaded by shrimp boats into a dumpster located on the deck of the M/V Odyssea Atlas. Exhibit 1, p. 63, lines 14-

16. The M/V Odyssea Atlas would travel to different locations in the Gulf of Mexico while Barlow was aboard the vessel. Exhibit 1, p. 124, lines 5-15. Barlow also slept and ate on the M/V Odyssea Atlas during his hitches. Exhibit 1, p. 187, lines 1-5. Barlow was involved in making sure the M/V Odyssea Atlas was clean because every morning he had to wash the back deck of the boat off because yellow powder would cover the boat every night. Exhibit 1, p. 117, lines 9-12, p.118, lines 5-10. Thus, Barlow did owe an allegiance to the M/V Odyssea Atlas because he sailed with the vessel, he cleaned the vessel, he ate and slept on the vessel, and his job was essential to the completion of the vessel's mission.

Additionally, Barlow's work was entirely "sea-based" and involved "sea-going activity". The entirety of Barlow's work aboard the M/V Odyssea Atlas was conducted offshore in the Gulf of Mexico. Exhibit 1, p. 197, lines 1-2. This District has held, "separation from the safety of land, even if not all that far, taken together with the fact that all of [Plaintiff's] work was performed aboard vessels midstream in a dangerous river, is enough of a distinction to make [Plaintiff's] work a sea-based activity." *Meaux*, 545 F. Supp. 3d at 388. Barlow was certainly separated from the safety of land when performing his work aboard the M/V Odyssea Atlas. Barlow's work on the M/V Odyssea Atlas was conducted entirely in the Gulf of Mexico approximately one to two hours from Venice, Louisiana, and he could not see land from where the vessel was located during his shifts. Exhibit 1, p. 87, lines 13-25. Barlow was never working merely "a gangplank away from shore," and consequently, he was engaged in sea-going activity. *Sanchez*, 997 F.3d 564, 575.

Finally, Barlow was not simply performing discrete tasks on the M/V Odyssea Atlas, and he sailed with the vessel to different locations. In a case involving the Deepwater Horizon oil spill, this District has found that a job consisting of handling boom while on a vessel and going

to different locations with the vessel is "not 'discrete' in the sense that Smart Fabricators used that term." *Sanchez v. American Pollution Control Corp.*, 542 F. Supp. 3d 446, 456 (E.D. La. 2021). Barlow did not return home after each day of work; rather, he lived on the M/V Odyssea Atlas for hitches up to 24 days, and he would travel with the M/V Odyssea Atlas to different locations in the Gulf of Mexico. Exhibit 1, p. 57, lines 13-25; p. 124, lines 5-15. Barlow was thus not simply performing discrete tasks after which his connection with the M/V Odyssea Atlas ended. Barlow travelled with the vessel and lived on the vessel for the entirety of his hitches.

For these reasons, the Court finds that Barlow is a Jones Act seaman for the purpose of this suit.

### b. Unseaworthiness

Barlow argues that the M/V Odyssea was unseaworthy in that Odyssea failed to provide him with required respiratory safety equipment.

A worker must be a member of a vessel's crew to assert an unseaworthiness claim. *Book v. Nordrill, Inc.*, 826 F.2d 1457, 1463 (5th Cir. 1987). The Court has found that Barlow was a member of the M/V Odyssea's crew. Nonetheless, Defendants argue that even if Barlow is a vessel crewmember, he cannot prove that the vessel was unseaworthy. They aver that Barlow does not know anything about the condition of the M/V ODYSSEA ATLAS, its machinery, or appurtenances; does not know anything about the qualifications or training of the vessel's crew; did not take instructions from the crew; and did not report directly to a member of the crew.

"To establish a claim for unseaworthiness, the injured seaman must prove that the [vessel] owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it was intended to be used*.*" *Boudreaux v. United States of America*, 280 F.3d 461, 468 (5th Cir.2002) (quoting *Jackson v. OMI Corp.*, 245

F.3d 525, 527 (5th Cir.2001)). "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm but a vessel reasonably suited for her intended service." *Boudoin v. Lykes Bros. S.S. Co.*, 348 U.S. 336, 339, 75 S.Ct. 382, 99 L.Ed. 354 (1955). "A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo, or the manner of its stowage, might be improper." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494 (1971).

Barlow testified that the odors from the oiled booms and bags were constant and there was an indescribable, strong smell from the crude oil. The inhalation of the odors have been found to be hazardous and cause a statistically significant increase in the very medical conditions suffered by Barlow. Further, Barlow testified that the vessel had a yellow material which was dispersant that covered the vessel every day and had to be washed off, a task that he participated in and was exposed to. Ex. 1 pgs. 117-120. Defendants point out that Barlow reported directly to and first requested respiratory protection from someone who was not in their employ. But the duty to provide a seaworthy vessel cannot be delegated. *Simmons v. Transocean Offshore Deepwater Drilling, Inc.*, 551 F. Supp. 2d 471, 476 (E.D. La. 2008). Odyssea thus had a duty to Barlow to provide him with a reasonably safe and fit work environment.

Accordingly, there is at minimum a genuine issue of material fact as to whether the M/V Odyssea Atlas was seaworthy.

### c. Location of Injury

Defendants argue that Barlow did not suffer any accidents or injuries and does not recall having any medical conditions or issues aboard the M/V Odyssea Atlas. Barlow complained of

no physical symptoms or medical issues until September 24, 2010, when he passed out while working on a barge not owned by Odyssea and was taken to the hospital. He was diagnosed with acute bronchospasm, dyspnea and respiratory abnormalities. Ex. 2 Terrebonne Medical Center ER records p. 3. However, even though Barlow testified that he did not notice any symptoms while serving as a member of the crew of the M/V Odyssea Atlas, he was diagnosed with these medical conditions very shortly after his alleged exposure aboard the vessel. As a Jones Act seaman, Barlow need only prove that the negligence for not providing respiratory protection was the slightest cause of his illnesses. *Gautreaux v. Scurlock Marine, Inc.*, 84 F.3d 776, 778–79 (5th Cir.1996). Therefore, a genuine issue of material fact exists as to whether Barlow suffered injury while employed about the M/V Odyssea Atlas.

### d. Clean-Up Defendants

Finally, Defendants argue that they are entitled to derivative immunity or that Barlow's claims against them are preempted by federal law. The Clean Water Act ("CWA") immunizes private parties, among others, who render assistance consistent with the National Contingency Plan. "Without such a provision the substantial financial risks and liability exposures associated with spill response could deter vessel operators, … from prompt, aggressive response*." In re Oil Spill by Oil Rig DEEPWATER HORIZON*, 2012 WL 5960192, *7 (E.D. La. 11/28/12). Accordingly, they argue that Barlow's claims are based on acts performed "under the direction and control of the federal government in the exercise of legitimate federal authority[,]" *Id.* at *9, and thus are preempted by the comprehensive federal response scheme set forth in the CWA, the Oil Pollution Act of 1990 ("OPA"), and the National Contingency Plan ("NCP").

Defendants point to *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 2016 WL 4091416 at 7-8 (E.D. La. 2016), in which the court held that

claims against the so called "Clean-Up Responder Defendants," parties that had been involved in oil spill cleanup under this federal response scheme, were preempted, and those defendants entitled to derivative immunity. However, the court in that case stated that Global Fabrication and Lawson Environmental were *not* Clean-up Responders, and made no finding as to whether Odyssea fell into that category. Here, Defendants did not present any evidence that they acted "under the direction and control of the federal government in the exercise of legitimate federal authority." *Id.* at 9. They simply make the conclusionary statement that "Barlow's claims are based on acts performed 'under the direction and control of the federal government in the exercise of legitimate federal authority.'" Rec. Doc. 57-1 at 14. They present no facts that evidence that OMI, Global, or Lawson were acting under the direction and control of the federal government. Consequently, there is at minimum a genuine issue of material fact as to whether Plaintiff's claims are preempted or barred by derivative immunity.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED**.

New Orleans, Louisiana this 8th day of August, 2022.

_____
UNITED STATES DISTRICT JUDGE